## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **DERRICK ANTHONY DEBRUCE,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )**Case no.  1:04-cv-2669-IPJ-JEO** |
| | ) |
| | ) |
| **DONAL CAMPBELL,** | ) |
| | ) |
| **Respondent.** | ) |

## MEMORANDUM OPINION ON PETITIONER'S RULE 59(e) MOTION

On August 4, 2010, a Memorandum Opinion and Order was entered denying Derrick DeBruce's petition for writ of *habeas corpus*, seeking relief from his state court conviction for capital murder and death sentence pursuant to 28 U.S.C. § 2254.[1]  DeBruce filed a timely motion to reconsider, alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.[2]  For the reasons discussed below, the motion is due to be granted in part and denied in part.

## I.    STANDARD OF REVIEW

The text of Rule 59(e) does not set forth specific grounds for relief, and the decision to alter or amend judgment is committed to the sound discretion of the

---

[1] *See* Doc. 31 (Memorandum Opinion) and Doc. 32 (Order).

[2] *See* Doc. 34 (Rule 59 Motion).

district court. *American Home Assurance Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985). "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir.) (per curiam), *cert. denied*, 552 U.S. 1040, 128 S. Ct. 660, 169 L. Ed. 2d 511 (2007)). Rule 59(e) may "'not be used to relitigate old matters or to present arguments or evidence that could have been raised prior to judgment.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)). Furthermore, a judgment will not be amended or altered if to do so would serve no useful purpose. 11 Wright, Miller & Kane, Federal Practice and Procedure § 2810.1 (2d Ed. 1995).

## II.   DISCUSSION

### A.   The court erred when it denied Petitioner's claim that defense counsel failed to competently impeach co-defendant Lujuan McCants at the guilt phase of trial. (Doc. 34, pp. 2-25).

Petitioner initially argues that "[t]he only source of evidence that Mr. DeBruce may have been guilty of intentional capital murder, rather than a participant in a fatal robbery who was guilty of non-capital felony murder, was McCants, the cooperating co-defendant...." (*Id.* at 2). Although he does not

2

dispute the Memorandum Opinion finding that counsel was deficient for failing to use McCants's prior videotaped statement as an impeachment device, he argues that it was error to find that DeBruce was not prejudiced. (Doc. 34 at 2-13). Petitioner also is dissatisfied with the rejection of his claim that Mathis inadequately impeached McCants by failing to bring forth McCants's alias, 'Warren.' (*Id.* at 14-15). Finally, he declares this court overlooked analytical errors made by the state court in assessing the prejudice aspect of the IAC claim. (*Id.* at 16-25).

> **1.** **The only source of evidence that Mr. DeBruce may have been guilty of intentional capital murder, rather than a participant in a fatal robbery who was guilty of non-capital felony-murder, was McCants, the cooperating defendant whose cross-examination for less than five pages this Court has already determined to have been constitutionally deficient.**

The above title is taken directly from DeBruce's motion. (*Id.* at 2). However, the content is devoted exclusively to this court's rejection of DeBruce's claim that he was prejudiced by counsel's failure to cross-examine McCants with a videotape containing statements inconsistent with McCants's trial testimony. (*Id.* at 2-15). Petitioner contends this court overlooked his argument that the state appellate court's opinion improperly substituted its finding of no plain error in connection with substantive claims on direct appeal for *Strickland's* prejudice

standard during collateral proceedings.  (*Id.* at 16-22).  He also reiterates that the state court made an analytical error when it pointed out that co-defendant Burton did not shoot the victim, yet Burton still received the death penalty.  (*Id.* at 22-25).

DeBruce already made these arguments, and they were considered and rejected for the reasons set out in the Memorandum Opinion.  (Doc. 31 at 24-34). First, the plain error argument was not overlooked - this court simply recognized that the *content* of *and analysis* contained in the state appellate court's opinion regarding the videotape shows the state court did not apply a prejudice standard contrary to *Strickland.  See DeBruce v. State*, 890 So. 2d 1068, 1086-87 (Ala. Crim. App.  2003).  Second, the opinion properly addressed the content and scope of the state court's flawed sentencing comparison, and thus an invitation to re-litigate the issue with new, expanded argument is now due to be rejected.

Before moving forward however, and although unmentioned by DeBruce, this court finds it important to acknowledge two errors of historical fact that it discovered in the Memorandum Opinion.  The corrected facts cast a different reflection on a previous legal conclusion.  The factual errors are: (1) that there was *no* corroboration of Kawaitta DeBruce's testimony at trial, and (2) that the jury *never* was made aware of a distinction between the sentences of life and life without parole in connection with McCants's plea agreement.  (Doc. 31 at 29).

4

Neither finding is entirely accurate.  As such, it was error for this court to conclude that the state court made an unreasonable determination when it found Mathis's impeachment of McCants to be adequate by relying, in part, on Kawaitta DeBruce's testimony and the plea bargain agreement.

The trial record shows that Kawaitta DeBruce testified that McCants, not DeBruce, lived with Barbara Spencer Long, and on the day the defendants were arrested it was McCants in the Long home with what was subsequently identified at trial to be the murder weapon by David Higgins, the State's firearm expert.  (*See* R. Vol. 6, Tab. 9 at 861-70, 960).  She further testified that it was Barbara Spencer Long who ran out of the backdoor of the house with the murder weapon and stood behind some bushes.  (*Id.*, Tab. 9 at 952-957).  Sergeant Lawrence Pugh had previously testified that he found Ms. Long and the murder weapon in the back yard.  (*Id.* at 826-39).

The record also shows that during Mathis's guilt phase closing argument the jury was made aware that McCants received a sentence of life as opposed to life without parole in exchange for his testimony against DeBruce.  Mathis argued:

> The entire incident at [the Spencer Long home] about who had what gun, and what was going on down there, coupled with the little girl's testimony this afternoon, that "LuJuan McCants told me he committed this murder," coupled with the fact that he traded a possible seat in the electric chair for a life sentence, not a life without

parole, but for a life sentence, gave him a tremendous reason to put this on somebody else.  All those things.  None of those things is a fanciful or flightful reason....  Every one of those ... constitutes a reasonable doubt that my man committed that murder.  Every one of them.

(R. Vol. 7, Tab. 11, p. 1023) (brackets added).

This court does not retreat from its decision that the state appellate court did not recognize the full import of the inconsistent statements on the videotape, and that Mathis should have used the videotape as an impeachment method.  (Doc. 31 at 29-30).   Nonetheless, counsel *did impeach* McCants through his plea bargain agreement and Kawaitta DeBruce.  *See DeBruce v. State*, 890 So. 2d at 1087. Since the jury was apprized of the sentence distinction (McCants would be eligible for parole) and there was some independent corroborating evidence of Kawaitta DeBruce's testimony (such that the jury could have chosen to credit her testimony), under these particular circumstances, the state court's legal conclusion - that Mathis's impeachment of McCants was not deficient - is neither contrary to nor an unreasonable application[3] of *Strickland*.

Even if Mathis's performance was inadequate, there is no reasonable

---

[3] The standard of review this court must apply is not whether the state court's findings regarding the videotape are correct, but whether they are contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it.  *See* 28 U.S.C. § 2254(d).

probability that the guilt phase outcome would have been affected had counsel cross-examined McCants regarding the prior inconsistent statements in the videotape.  Mathis *did impeach* McCants, and to the extent he did so that impeachment must be considered along with the abundance of trial evidence[4] showing DeBruce's guilt as to the capital offense.  Further, Mathis made a strong closing argument that encouraged the jury to find DeBruce guilty of felony murder by taking full advantage of the weaknesses in the State's triggerman argument and the alternate question of whether DeBruce had the requisite intent to commit murder from a complicity standpoint.  (R. Vol. 7, Tab. 11 at 1009-26).  There is no reasonable probability that DeBruce would have been acquitted of capital murder had Mathis utilized the prior inconsistent statements in the videotape.

For the foregoing reasons, no purpose would be served by altering or amending the judgment on the grounds requested by DeBruce.  It is, however, due altered and amended to correct the two factual errors and the legal conclusion

---

[4]  The Alabama Court of Criminal Appeals found that "the evidence against DeBruce was overwhelming - numerous witnesses testified and detailed DeBruce's involvement." *DeBruce v. State*, 890 So. 2d at 1087.  This court refuses DeBruce's invitation (doc. 34, pp. 2-10) to gloss over those historic facts that are *independent of* McCants's impeachment and which *provide ample support* for DeBruce's guilt of the capital offense.  Those facts were acknowledged by direct citations to the trial transcript in the Memorandum Opinion.  (Doc. 31, p. 33, n.16).  The court also declines Petitioner's invitation to argue legal inferences from that evidence, particularly when that decision was within the exclusive province of a jury that DeBruce admits was properly instructed on the elements of the capital offense and complicity, as well as felony murder.  The jury clearly chose to find him guilty of the capital offense.

regarding the objective prong of the *Strickland* standard as described hereinabove.

> **2. Counsel's performance was objectively deficient in failing to cross-examine McCants about an alias ('Warren') that tied him to the murder weapon**.

DeBruce also moves this court to reconsider its determination that Mathis was not ineffective for failing to cross-examine McCants regarding his purported use of the alias 'Warren.' (Doc. 34 at 14). He presents no argument that would convince the court that its rejection of the claim resulted in manifest error. (*See* Doc. 31 at 30-34 and Section B.2.b., *infra*.). Petitioner's request is denied.

> **B. This Court did not address Petitioner's claim that he suffered "spillover prejudice at the penalty phase of trial" due to defense counsel's inadequate impeachment of co-defendant Lujuan McCants at the guilt phase of trial.** (Doc. 34, pp. 25-33).

DeBruce next argues that the above claim, concerning spillover prejudice, was set out in paragraph 59 of his petition and extensively argued in his reply brief, but was not addressed on the merits in the Memorandum Opinion. (*Id.* at 25 (quoting Doc. 1, at 17-18, ¶ 58 and citing Doc. 20 at 107-20)). Respondent stated in the answer that paragraph 58 was an introductory paragraph and denied it. (Doc. 14 at 26). Paragraph 58 reads:

> **5. PENALTY PHASE**
>
> 58. Trial counsel's failure to impeach McCants and use evidence that Mr. DeBruce was not the shooter also prejudiced Mr.

8

> DeBruce at the penalty phase. Even if evidence does not "undermine
> the prosecution's death-eligibility case it can still influence "the
> jury's appraisal of his moral culpability." *Williams v. Taylor*, 529
> U.S. at 397-98; *Smith v. Wainwright*, 741 F.2d 1248, 1255 (11th Cir.
> 1984) (failure to impeach witness at guilt phase resulted in prejudice
> at the penalty phase); *cf. Brady v. Maryland*, 373 U.S. 83 (1963)
> (evidence that accomplice was actual shooter during a robbery would
> tend to reduce defendant's punishment).

(Doc. 1 at 17-18). The next paragraph, ¶ 59, is a conclusory synopsis of what

becomes all the remaining sub-claims in Section 5. (*Id*. at 18). Those remaining

claims are divided into categories: (a) aggravating circumstances, (b) mitigating

circumstances, and (c) other penalty phase issues. (*Id*. at 18-33). None of these

mention or pertain to paragraph 58.

Considering the vague, general and conclusory manner in which paragraph

58 is pleaded, and the complete absence of any specific allegations or analysis

pertaining to it in the remainder of section 5, it is not surprising that Respondent

interpreted it as an introductory paragraph and denied it. Petitioner insists he

intended paragraph 58 to be a separate sub-claim, but his petition does not reflect

that assertion.

Ironically, Petitioner's pleading failure is highlighted by the fact that he

now argues that he afforded 13 pages of his *reply brief* to this alleged claim.

These allegations should have been placed in his petition so that Respondent fairly

could have responded to what ends up being only four (4) very specific allegations (out of an extremely large and diverse number raised at the guilt phase) upon which to assert that he is entitled to penalty phase relief.  Petitioner's conclusory paragraph did not afford Respondent timely notice of and an opportunity to defend against these 4 items prior to filing its answer.  Thus, paragraph 58 is due to be dismissed as insufficiently pleaded, or in the alternative, denied on the merits for failure to state a claim upon which relief can be granted.  In so doing, the court will not consider the four allegations belatedly and improperly raised for the first time by way of his reply brief.

 As an alternative, consideration of the claim shall be restricted to the four allegations in the reply brief.  At the heart of DeBruce's argument is his belief that the jury only recommended the death penalty because Mathis did not cast doubt on the identity of the triggerman by impeaching McCants with:

> (1) .... inconsistent statements about the gun he used, (2) that McCants first named DeBruce as the shooter after the police urged him to "defend" himself against DeBruce's statement that McCants was the shooter, (3) that Deon Long purchased the murder weapon in the company of "Warren," a name that matched an alias used by McCants, and (4) that Calhoun reported that three robbers had chrome-colored guns rather than the two robbers with shiny weapons that McCants testified about.

(Doc. 20 at 107).

10

### 1.    Objective deficiency.

An extensive discussion of whether counsel was objectively deficient[5] as to items (1)-(4) is unnecessary because the decisions concerning that prong at the guilt phase of trial are applicable to the penalty phase of trial.  (*See* Memo. Op., Doc. 31 at 24-38, as altered and amended in Section A of this Order*, supra*.).  Even if, however, counsel was objectively deficient, DeBruce cannot establish that he was prejudiced at the penalty phase of trial.

### 2.    Prejudice.

#### a.    Items (1) and (2) – The videotape.

DeBruce again complains that the state appellate court used an improper (plain error) standard of review and engaged in a defective sentencing comparison to find that he was not prejudiced by the absence of the videotape.  (Doc. 34 at 31).  These issues have already been addressed in Section A, and the decision applies to the penalty phase of trial as well.  Thus, while the state court did apply

---

[5] In his Rule 59 motion, DeBruce also declares "if counsel's cross-examination had raised enough questions about whether Mr. DeBruce had been the triggerman, it cannot be assumed the defense counsel would necessarily have relied entirely upon a 'beg for mercy' strategy at the penalty phase.  (Doc. 34, p. 29 (citing *DeBruce v. State*, 890 So. 2d at 1093 (finding during reweigh that counsel's beg for mercy penalty phase strategy was not deficient given the facts of the case))).  However, the Alabama Court of Criminal Appeals did not include the four impeachment items about which DeBruce complains.  As such, this argument, as it pertains to items (1)-(4) and the objective prong of the *Strickland* standard is without foundation.

the proper *Strickland* standard to examine items (1) and (2), its use of a sentencing comparison to justify a finding of no prejudice offends individualized sentencing concerns.

Therefore, this court's review of prejudice and the videotape is *de novo*. The court begins with the tape itself, which is not nearly as impressive as DeBruce suggests. As set out in the Memorandum Opinion, the tape shows that McCants's statements about what gun he possessed during the robbery were ambiguous, not inconsistent. (Doc. 31 at 37). Further, McCants's demeanor and the tone of the interview show an equally plausible reason why he named DeBruce as the shooter - because other co-defendants not only broke the gang's code of silence, but falsely pointed to McCants as the shooter. (*Id.* at 25, n.8). In fact, McCants initially refused to believe any of the group had spoken to police and was adamant that he would not discuss anyone involved in the offense. Only after McCants was repeatedly told and then finally shown a document revealing that other co-defendants had not only spoken to the police about the crime but also named him as the shooter did McCants finally identify DeBruce. (*Id.*)

In addition to overestimating the tape's impact in his favor, DeBruce does not acknowledge the fact that Mathis did present evidence that McCants was the triggerman with a strong motive to lie - by impeaching McCants with his plea

agreement and Kawaitta DeBruce.  Moreover, Mathis's guilt phase closing

argument centered on McCants as the triggerman with motives to lie.  Certainly,

Mathis could have reiterated these themes at the penalty phase - but that does not

mean that DeBruce was constitutionally prejudiced because Mathis did not.

DeBruce points to several Supreme Court and Eleventh Circuit cases to

support his contention that he was prejudiced by counsel's failure.  (Doc. 20 at

108-09).  However, the facts of his case are unlike the cases upon which he uses

for comparison and relies on for support.

For example, Petitioner tries to compare his case to *Brady v. Maryland*, 373

U.S. 83 (1963), but in that case, the United States Supreme Court found that

Brady's right to due process of law was violated because the prosecution failed to

disclose that a co-defendant admitted that he committed the actual murder with

which Brady was charged.  Thus, neither defense counsel nor the jury were made

aware of the co-defendant's admission at trial.

DeBruce also tries to rely on *Smith v. Wainwright*, 741 F.2d 1248 (11th Cir.

1984).  In that case, the question was whether the district court erred in failing to

grant Smith an evidentiary hearing on his ineffective assistance of counsel claim.

During Smith's trial, co-defendant Wesley Johnson testified that Smith had

committed the actual murder, whereupon defense counsel impeached Johnson with

13

a jailhouse letter Johnson wrote that inferred his (Johnson's) guilt.  Smith testified

at trial that he was not involved in the murder.  Johnson's wife, Patricia Johnson,

then testified as a rebuttal witness that her husband had made previous statements

consistent with his trial testimony–that Smith committed the actual murder.

Although forensic evidence in the form of tire tracks and shoes belonging to Smith

were found, Smith explained that he had let Johnson borrow his car and that his

shoes were in the car.  *Id.* at 1254, n. 8.  Therefore, the only other evidence against

Smith was given exclusively by the Johnsons.  *Id.* at 1254.

Before trial, defense counsel had been afforded discovery of several

statements made by the Johnsons.  This information revealed that when the

Johnsons were each separately questioned for the first time about the murder,

neither mentioned Smith at all and both were content to relate that Wesley

Johnson had committed the murder.  *Id*.  However, several days later Patricia

Johnson was allowed to speak with her husband, and thereafter Wesley Johnson

indicated Smith was involved but would not provide details until a plea bargain

was discussed.  *Id*.  Upon considering the foregoing, the Eleventh Circuit

remanded the case to the district court for an evidentiary hearing.  On return to

remand, the Eleventh Circuit affirmed the district court's finding that counsel there

had been no strategic reason for counsel not to utilize the inconsistent statements,

14

and further, that Smith was prejudiced by the error because the jury was never made aware of the first statements.  As such, the jury was led to believe by Johnson - as buttressed by his wife's rebuttal testimony - that Johnson only had given consistent statements concerning Smith's involvement.

Finally, in *Agan v. Singletary*, 12 F.3d 1012, 1018-19 (11th Cir. 1994), a mentally ill inmate confessed to murdering another inmate under circumstances that even investigating law enforcement officials questioned his guilt and suspected he was covering up for other inmates.  Trial counsel did almost no investigation, allowed Agan to plead guilty and Agan was sentenced to death.  During post-conviction proceedings, material surfaced from a prison investigator's file that showed significant evidence of Agan's innocence.  Moreover, prison medical records showed that Agan had been seriously mentally ill and at times psychotic for decades, which would have explained Agan's odd testimony at the penalty phase of trial.  Had counsel interviewed witnesses or conducted a reasonable investigation, he would have discovered all of this information.  The Eleventh Circuit found that Agan had been prejudiced by his counsel's objective deficiencies because the entire evidentiary picture would have been changed.

In DeBruce's case, the jury not only heard evidence from multiple independent sources as to his deep and significant involvement in the crime, it also

15

heard the conflicting evidence as to the identity of the triggerman.  Thus, contrary to DeBruce's assertion, the jury had evidence from which it could appraise the level of his "'moral culpability.'"  (Doc. 20 at 108 quoting *Williams v. Taylor*, 529 U.S. at 398).  The evidentiary picture would not have been changed by the tape. There is no reasonable probability that the jury's penalty recommendation would have been affected by the videotape.  Petitioner has failed to prove he was prejudiced.  This claim is due to be denied.

### b.   Item 3 – the alias 'Warren'

DeBruce fails to make it clear whether he is alleging that Mathis failed to impeach McCants through: (1) cross-examination of McCants with two documents *or* (2) by calling witnesses who would have testified regarding the information contained in those documents.  There is no specific mention of McCants's use of the alias Warren in either the Rule 32 court's order or the state appellate court's order.   However, it is apparent that, to the extent DeBruce alleged counsel *failed to call* exculpatory/mitigating witnesses to testify about the alias and the purported chain of custody as to the murder weapons, the state courts ruled that DeBruce did not satisfy his burden to prove this claim on the merits because the witnesses were

not called at the evidentiary hearing either.[6]  DeBruce does not dispute that he

never called the witnesses during the Rule 32 hearing.  Since he cannot show that

the state court's factual determination was unreasonable, the decision to reject this

*Strickland* claim is neither contrary to or an unreasonable application of clearly

established federal law.

　　　　To the extent DeBruce is arguing that Mathis should have *cross-examined*

---

[6]  The Alabama Court of Criminal Appeals held:

　　　　DeBruce makes other claims concerning his counsel's performance in the
guilt phase of his capital proceedings; however, he failed to present any evidence in
support of the remaining contentions.  As the circuit court stated in its order -
DeBruce failed to meet his burden of proof.

*DeBruce v. State*, 890 So. 2d at 1088.  A careful review of the Rule 32 court's order shows the
appellate court was referring to Section C. 6. of the circuit court's order, and which reads in pertinent
part:  "DeBruce failed to meet his burden of proof regarding Tim Calhoun, chain of custody
witnesses [regarding the gun and alias], Officer Grace, and the other witnesses listed on page 35 of
his [post-hearing] brief.  There was no evidence regarding this issue."  (Rule 32 .C.R. Vol. 13, p.
591) (brackets added).  Page 35 of the post-hearing brief pertains to DeBruce's claims that Mathis
should have called these witnesses for exculpatory/mitigating purposes.  (Rule 32 C.R. Vol. 14, p.
679). Section 3.G. of his *collateral appeal brief* remained virtually the same as the post-hearing
brief.  (Rule 32 C.R. Vol. 27, Tab. 47, pp.  25-29).

17

McCants with "police reports"[7] and a "certification hearing" transcript[8] which contain the subject matter of what his uncalled witnesses purportedly would have testified, a habeas decision becomes more problematic.  This is because neither the evidentiary hearing nor the state court orders make either a clear decision on the issue or reveal the basis upon which it was made.  There are several reasons for this conclusion.

First, it appears the documents at issue were being offered in support of *Brady* and ineffective assistance of counsel claims.  Second, the State voiced virtually no objections to any of Petitioner's exhibits when Mathis was being questioned about them.  The colloquy concerning admissibility of the exhibits as evidence did not even take place until the final evidentiary hearing date, which was more than one month after Mathis testified.  Third, the State never made any

---

[7] At the Rule 32 hearing, Mathis stated he would have used a series of police reports "concerning the tracing of a weapon'" to cross-examine McCants had he been given the reports in discovery, but also admitted he may have overlooked them.  (*See* Rule 32 R. Vol. 15 at 70-71 and Rule 32 C.R. Vol. 19 at 183-87).  The reports were offered into evidence without objection as Defendant's Exhibit 2.  Exhibit 2 contains a report showing the gun was purchased by Anthony Fluker, along with an unsworn statement by Fluker that he allowed one Kendall Wadsworth to borrow it.  It also includes an unsworn statement by Wadsworth that he had pawned the gun to Deon Long about one month before the crime and Long was with a "b/m Warren and a b/m 'Little Bit." (Rule 32 R. Vol. 15 at 70-71 and Rule 32 C.R. Vol. 19 at 183-87 "Defendant's Exhibit 2").

[8] A transcript of the hearing in which McCants was certified as an adult was admitted into evidence at the Rule 32 hearing without objection.   In the transcript, Officer Jamie Grace testified that McCants had used the alias Warren.  (See Rule 32 C.R. Vol. 20, pp. 315-29 "Defendant's Exhibit 6").

objections to this particular police report and the certification hearing.  While the court did sustain hearsay objections made concerning other exhibits, and made general comments that court records were to be admitted into evidence but police reports were not because of hearsay concerns, the court did not make any independent ruling on the police reports and certification hearing at issue.  Finally, the court repeatedly stated that anything Mathis had testified to on the stand at the evidentiary hearing was in evidence.

These peculiarities, coupled with the lack of clarity in the state court orders, leads this court to determine there was no state court decision upon which it is required to apply § 2254(d) analysis.  DeBruce alleges these exhibits should have been used to cross-examine McCants about the alias 'Warren'.  However, even if the documents are considered to be offered and admitted for the truth of the matter asserted, DeBruce's argument is simply too speculative to have the prejudicial impact he suggests.  Nothing identifies the Warren who accompanied Long on the gun purchase as being McCants, and thus a large portion of plausible evidentiary connection between the report and certification hearing is lost.

Further, DeBruce insists the alias and chain of custody evidence would have shown that McCants had close access to the murder weapon a month before the crime.  However, at trial DeBruce had hard evidence (not speculation) from two

19

sources that McCants - not DeBruce - was in close proximity to the murder weapon and bullets when McCants was arrested just days after the crime. Again, the jury was well aware there was a conflict as to whether McCants or DeBruce was the triggerman. When this unused "impeachment" material is examined in light of all other circumstances surrounding the crime, there is no reasonable probability that the outcome of the jury's recommendation would have been altered in such a fashion that confidence in the outcome of that phase of trial is affected.

### c.  Witness Tim Calhoun

DeBruce alleges that counsel was ineffective for failing to call Tim Calhoun as an exculpatory/mitigating witness. DeBruce contends Calhoun's testimony could have impeached McCants's testimony regarding the number of chrome guns displayed during the robbery. However, he did not call Calhoun as a witness during the evidentiary hearing, and the information contained in Calhoun's statement has no exculpatory or mitigating value.[9] Therefore, he did

---

[9] The court notes that the police report and written statement made by Calhoun were offered into evidence without objection at the evidentiary hearing as Defendant's Exhibit 1. (Rule 32 R. Vol. 15, p  (Rule 32 C.R. Vol. 19 at 178-82). Even if the content of Exhibit 1 is considered, the information is of no favorable significance to DeBruce at the penalty phase of trial. In fact, it could have made the complicity capital case against DeBruce stronger at both phases, because in the report Calhoun states that one co-defendant pointed a gun at Calhoun and told him that his head would be blown off if Calhoun did not correctly tell how to open the cash register.

not satisfy his burden to prove the claim and it fails at the penalty phase of trial for the same reasons as it failed at the guilt phase of trial.  (*See* Memorandum Opinion, Doc. 31 at 35-38).

> **C.   Whether an adequate investigation into DeBruce's prior Jefferson County robbery conviction would have revealed that the victim in that case "was an acquaintance" of DeBruce, thus lessening the weight this aggravating circumstance would have been given.**  (Doc. 34 at 33-39).

DeBruce alleges (doc. 34 at 33-34), and this court agrees, that there is one, but only one "consequence of counsel's failure to investigate the Jefferson County conviction" that was not addressed in the Memorandum Opinion.  (*Id*. at 33-34). It is also agreed that *de novo* review of the sub-claim is appropriate because although DeBruce raised this claim during post-conviction proceedings,[10] neither the circuit court nor the state appellate court made any determination regarding it. (*Id*. at 34).  Nonetheless, an examination of the pleadings, the trial and post-

---

[10]  In one paragraph of Claim H of his Rule 32 petition, Petitioner alleged that

> Trial counsel failed to conduct an adequate investigation and cross-examination of critical prosecution witnesses whose testimony had to be challenged in order to provide Mr. DeBruce with a fair trial.  Nor did he request an adjournment to conduct an investigation of such witnesses.   These witnesses included the following: Ruth Gwinn, Jeffrey Wallace, and Bryan White.  For example, counsel made no effort to confront Mr. White with his prior inconsistent statements, his bias towards petitioner, and his motive to lie.

(Rule 32 C.R. Vol. 13, p. 422).

conviction records clearly shows that DeBruce failed to allege and prove his claim on the merits.

In support of his motion, DeBruce points to and quotes ¶ 65 of his habeas petition, which reads:

> "Counsel did not obtain or review any of the police reports concerning the Jefferson County allegations.  Had counsel conducted minimal inquiry, he would have been able to refute the Talladega prosecutor's suggestions that the Jefferson County case was an unprovoked, violent robbery by a stranger; instead, counsel could have shown that the Jefferson County incident was a minor dispute among acquaintances, that the Jefferson County complainant - who testified against Mr. DeBruce in Talladega - was biased and had a motive to fabricate.  At a minimum, effective counsel could have presented mitigating evidence that would have lessened the impact of the Jefferson County conviction.  *Lockett v. Ohio*, 438 U.S. 584 (1978)."

(*Id*. quoting Doc. 1 at 21).  In his Rule 59 motion, DeBruce reiterates that had counsel discovered and

> used the police reports that he was shown at the Rule 32 hearing that indicated the complainant in the Jefferson County case, Bryan White, and Mr. DeBruce knew each other, counsel could have, at a minimum, portrayed the Birmingham robbery as being a very different sort of crime than the Talladega crime[7] and not one that should carry much weight in deciding whether Mr. DeBruce should be sentenced to death.
>
> > [7] The police reports do not indicate that any weapon was used in the Jefferson County crime.  While on the street, White was allegedly slapped on the face while a second defendant restrained him.  Property was allegedly taken

22

from White's pocket (Vol. 21 pp. 439-44).

(*Id*. at 37).

DeBruce's claim is without merit for a number of reasons.  First and foremost, the police report itself was not admitted into evidence on hearsay grounds at the evidentiary hearing.  Although the police report[11] shows that the victim of the robbery knew who the suspects were and where they lived[12], it cannot be extrapolated from the report that the victim and DeBruce were acquaintances in a minor dispute.  Moreover, the victim testified at the penalty phase of trial, but DeBruce has never alleged he told Mathis any information so that Mathis could have cross-examined the victim about bias or motive.[13]  Nor is it mitigating that DeBruce held the victim, repeatedly slapped his face, and forced him to give DeBruce his property - as opposed to using a weapon.  It also cannot

---

[11]  The admission of the Jefferson County police report, identified as Defendant's Exhibit 10 at the evidentiary hearing, was objected to by the State on the grounds of hearsay, and the Rule 32 court sustained the objection.  (Rule 32 R. Vol. 18 at 301-302 (The Court stated, "I don't mind letting any court document in.  Police reports, I sustain the objection.").  Nonetheless, counsel asked if the court also was striking Mathis's testimony on the subject, and the court answered, "It's in evidence relative to testimony."  (*Id*. at 302).

[12] Rule 32 C.R. Vol. 21 at 440 (Defendant's Exhibit 10 to Rule 32 hearing).

[13]  Records at the penalty phase of trial show that Mathis tried to argue that the robbery conviction could not be used as an aggravator on the basis that DeBruce told him that he (DeBruce) had not been afforded the opportunity to apply for youthful offender and receive youthful offender status.  Thus, it is clear that DeBruce was able to communicate with counsel about this offense had he chosen to do so.

be overlooked that ultimately, DeBruce did plead guilty to the robbery offense.

Further, post-conviction counsel indicated that they had subpoenaed and intended to call Lamont Edwards[14] as a witness "who would testify about the relationship between Brian[15] White and Mr. DeBruce and the facts concerning the predicate Jefferson County felony ..."  (Rule 32 R. Vol. 15, Tab. 45 at 9). However, counsel never called Edwards as a witness, even though Edwards was incarcerated in the Jefferson County Jail and the court reassured counsel that he could "get them over here, just let me know ... a certain time to have them here." (*Id.*, Vol. 16 at 358, 365).

For the foregoing reasons, DeBruce did not allege and prove that counsel's failure to utilize the police report was either objectively deficient or that he was prejudiced thereby.  This claim is due to be and is hereby denied on the merits.

   **D.   Methodology and determination that counsel's failure to discover evidence of DeBruce's borderline intelligence did not prejudice him at the penalty phase of trial.**  (Doc. 34 at 39-44).

DeBruce alleges that this court erred in its analysis and conclusion when it found that his borderline intelligence was "'not particularly weighty mitigating evidence'" because it relied on comments by the Rule 32 judge (also the trial

---

   [14] Mathis responded in the negative when he was asked during post-conviction proceedings if he was aware that the victim previously assaulted DeBruce.  (Rule 32 R. Vol. 15, Tab. 45, at 157).

   [15] This individual's given name is spelled "Bryan" in the police report.  (*See supra.*, n.12).

24

judge) during post-conviction proceedings.  (Doc. 34 at 39 quoting Mem. Op.
(Doc. 31) at 69).  DeBruce misinterprets the court's Memorandum Opinion.  The
purpose of the comments was simply to point out that the jury had the opportunity
to observe DeBruce first hand, hear the evidence concerning DeBruce's behavior
before, during and after the incident, and then make its own common sense
determination regarding DeBruce's level of intelligence.  In other words, the court
was recognizing that even if the jury had been made aware of DeBruce's true level
of diagnostic intelligence, its personal observation of him and the crime events are
still practical considerations in determining the mitigating weight of that
diagnosis.

DeBruce also declares that any reliance on the jury's observations also was
"erroneous because it cannot be assumed[16] that an attorney whose investigation
of mitigation had not been constitutionally deficient would have chosen a 'beg for
mercy' strategy." (*Id.* at 42).  However, this argument is a red herring because

---

[16] In fact, it is DeBruce who requests this court *assume* that counsel would have abandoned the beg for mercy theory at the penalty phase in favor of the theories he touts.  (Doc. 34 at 42-43). However, DeBruce had an opportunity at post-conviction proceedings to ask counsel whether evidence of this would have changed his penalty stage strategy, but he did not.  A low intelligence strategy could have been combined with and was not contradictory to the beg for mercy strategy. Petitioner contends that "[t]he idea that Mr. DeBruce's [closing argument before the jury] is . . . highly problematic ...  It was a pitiful plea [Vol. 7, Tab. #R- 21 at 1168-70] that could have been delivered by most persons and was not inconsistent with the low intelligence reflected in the IQ scores." (*Id.* at 42, n.10).

Petitioner admits that this court found that counsel's failure to present evidence concerning his intelligence was not a strategic decision.  (*Id*. at 40 quoting Mem. Op. (Doc. 31 at 68) (quotations omitted)).  Furthermore, the Memorandum Opinion did not mention the beg for mercy strategy in its analysis of whether counsel's performance was deficient.

> Moreover, in the context of a prejudice analysis the reasonableness of the theory is not relevant when evaluating the impact of evidence that would have been available and likely introduced, had counsel completed a constitutionally adequate investigation before settling on a particular mitigation theory.  This point was also plain in *Williams*[17]: "Whether or not ... omissions [in the investigation] were sufficiently prejudicial to have affected the outcome of sentencing," they may nevertheless demonstrate deficiency.  529 U.S., at 396, 120 S. Ct. 1495.  The one inquiry, deficient mitigation investigation, is distinct from the second, whether there was prejudice as a result.

*Sears v. Upton*, ___ U.S. ___, 130 S. Ct. 3259, 3265, n.10 (2010) (text brackets in original) (footnote brackets added).

To make its prejudice ruling abundantly clear, this court reiterates its finding that DeBruce proved he was of borderline intelligence, which is a mitigating factor, but other facts lead the court to conclude that the factor, in and of itself, is not particularly weighty.  Regardless, as set out in the Memorandum Opinion, the question becomes one of reweighing all aggravating and mitigating

---

[17] *Williams v. Taylor*, 529 U.S. 362, 396 (2000).

evidence brought forth and trial and during post-conviction proceedings.  (Doc. 31

at 69-70).  The court adheres to its earlier finding that the state court's reweigh

does not offend *Strickland*.  (*Id*.)

> **E.    Ineffective counsel based on a failure to investigate mitigating evidence concerning DeBruce's family background, educational records and childhood.**  (Doc. 34 at 44-49).

DeBruce next contends this court's conclusion that he was not prejudiced[18]

by "counsel's failure to follow ... leads in the Garner report is flawed."  (Doc. 34

at 46).  Specifically, he asserts that "[t]his Court based its conclusion *in part*, on

its characterization of Mr. DeBruce's childhood as less horrific than those of the

defendant in *Williams v. Taylor*, 529 U.S. 362 (2000), *Wiggins v. Smith*, 539 U.S.

510 (2003), and *Rompilla v. Beard*, 545 U.S. 374 (2005).  (*Id.* (citing Mem. Op.

(Doc. 31) at 66-67)).  He then complains that the "analysis ignores that the weight

and seriousness of the aggravating circumstances in *Williams*, *Wiggins*, and

*Rompilla* were also much greater than in Mr. DeBruce's case...."  (*Id.* at 47).

Petitioner's argument is without merit because such an analysis is not

required.  In fact, the Eleventh Circuit recently used the mitigating factors in

*Williams* and *Wiggins* as "mere guideposts" in its quest to determine the weight of

---

[18] Petitioner asks the court to reconsider its findings regarding the objective prong of *Strickland* and these claims.  (*Id.* at 46).  His request is due to be denied.

the mitigating factors in another case - and it did so without discussing the aggravating factors in the Supreme Court cases. *See Boyd v. Allen*, 592 F.3d 1274, 1298-1300 (11th Cir. 2010) ("Moreover, while we do not seek to minimize the adversities Boyd has faced, the record, including the evidence introduced at his post-conviction hearing, does not reveal the kind of abuse or deprivation inherent in other cases where *Strickland* prejudice has been found.")

Again, as set out in the Memorandum Opinion, the question becomes one of reweighing all aggravating and mitigating evidence brought forth and trial and during post-conviction proceedings.  (Doc. 31 at 69-70).  The court adheres to its finding that the state court's reweigh[19] does not offend *Strickland*.  (*Id*.)

**F.    This Court "put the question too narrowly" when it found that the Alabama Court of Criminal Appeals did not unreasonably balance the aggravating and mitigating factors on collateral review**.  (Doc. 34 at 49-53).

DeBruce lastly alleges that the Alabama courts' method of weighing and reweighing of aggravating and mitigating circumstances on collateral appeal offended 28 U.S.C. §§ 2254(d)(1) and (2).  However, this conclusory assertion is supported by nothing other than a repeat of penalty phase arguments already

---

[19] Contrary to DeBruce's inference (doc. 31 at 69), the state court opinion on collateral appeal makes it readily apparent that it considered the two aggravating factors as well as the "cold-blooded manner in which the killing occurred" to be very weighty.  *DeBruce v. State,* 890 So. 2d at 1093. The state court was entitled to make that determination and this court must afford deference to it.

addressed (*see supra.*, B. through E.) and general citations to *Strickland* and

§ 2254(d)(1)(2) standards as being "the manner in which" the state court on

collateral review should have weighed and reweighed the factors.  For the reasons

already clearly set out in this opinion, DeBruce is not entitled to Rule 59 relief on

this claim.

## III.   CONCLUSION

For the foregoing reasons, the Motion to Alter or Amend the Judgment (doc.

34) is due to be granted in part and denied in part.  Specifically, the motion is due

to be granted only to incorporate the factual corrections and legal conclusions set

out in this Memorandum Opinion into the Judgment.  Since the incorporations do

not result in habeas relief, however, the motion is due to be denied to the extent

that DeBruce requests reversal of his capital murder conviction and sentence of

death.  An appropriate order will be entered.

**DONE**, on this the 4th  day of March 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE